**Adam D. Ford** (11363)
FORD & HUFF LC
10542 South Jordan Gateway, Suite 300
South Jordan, UT 84095
Telephone: (801) 407-8555
adam.ford@fordhuff.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMBUHEL, JOHN; AMBUHEL, MARA; BIGLER, OLIVER; BIRD, STEPHANIE; BIRD, WILLIAM; BLACKHAM, MIKE; BLECHMAN, IVY; BROWN, BRETT; BRUMMETT, JEREMY; BYINGTON, PATRICIA; CARDON, ANTHONY; CARDON, RACHEL; CURTIS, CLARK; CURTIS, STACEY; DALLEY, COLBY; DALLEY, MICHELLE; DIXON, RICK; FLOYD, HEATHER; FLOYD, RYAN; FONTANA, ERIC; FONTANA, TAMMY; FRANK, MARCO; GAILEY, JULIE; GAILEY, VARNEY; GLINES, JEFFERY; GLINES, JULIE; GUNNELL, BRIAN; HANSEN, KRIS; HARRISON, KEITH; HYATT, HOLLY; HYATT, SCOTT; JONES, WARREN; JORGENSEN, DEAN; JORGENSEN, LOUISE; KNAPP, CHRIS; KROFF, JARED; LARSEN, RYAN; LARSEN, SANDY; MAGLEBY, GREGORY; MAGLEBY, TINA; MERRILL, MIKE; MOON, SHAWN; MONGIE; DENISE; MUNSEN, GARY; NICOLLS, MARCUS; NIELSON, LESTER; NIELSON, JANICE; PACE, ROSA; PACK, BENJAMIN; PACK, KELLY; PILON, KEVIN; PILON, SHARON; PRAZEN, JOSH; REDDING, | **COMPLAINT**<br><br>Case No. 2:11-CV-00133<br><br>Judge Bruce S. Jenkins |

| | |
|---|---|
| AARON; REDDING, ALICIA; REID, LINDA; REID, STACY; RICH, DOUGLAS; ROSIER, BRETT; ROSIER, SANDRA; SALISBURY, JANIS; SALISBURY, JIM; SHAFTO, HEIDI f/k/a FOSTER, HEIDI; SHENEMAN, LYLE; SODENKAMP, BECKY; SMITH, JANA; SMITH, STEVE; SOUTHAM, DARIN; STILLMAN, MARK; STILLMAN, RENDY; STODDARD, DOUGLAS; STODDARD, LINDA; STUART, BARBARA; SYLVESTER, SHAUN; TAYLOR, JULIE; TAYLOR, TODD; TISCHNER, ROBYN; TISCHNER, TROY; WARNER, DIANE; WATERS, BRANDON; YOUNG, DENEISE; YOUNG, KENDALL; and JOHN DOES 1-X, unknown individuals.<br><br>            Plaintiffs,<br>  v.<br><br>ABN AMRO MORTGAGE GROUP, INC.; AAMES FUNDING CORP.; AEGIS WHOLESALE CORPORTION; AMERICAN HOME MORTGAGE ACCEPTANCE, INC.; AMERICAN MORTGAGE NETWORK, INC.; AMERICA'S WHOLESALE LENDER; ARGENT MORTGAGE COMPANY, LLC; BAC HOME LOANS SERVICING LP; BANK ONE, N.A.; BAYROCK MORTGAGE CORPORATION; CAPITAL ONE HOME LOANS, LLC; CITIFINANCIAL, INC.; CITIMORTGAGE, INC.; CLASSIC HOME LENDING, INC.; COLUMBIA STATE BANK f/k/a COLUMBIA RIVER BANK MORTGAGE GROUP; COUNTRYWIDE BANK; COUNTRYWIDE BANK, FSB; | |

COUNTRYWIDE BANK, N.A.; COUNTRYWIDE BANK, N.A. f/k/a AMERICA'S WHOLESALE LENDER; COUNTRYWIDE HOME LOANS, INC.; FIRST FRANKLIN, a division of NATIONAL CITY BANK; FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK N.A.; FRANKLIN AMERICAN MORTGAGE COMPANY; FREMONT INVESTMENT AND LOAN; GMAC MORTGAGE LLC; GREENPOINT MORTGAGE FUNDING, INC.; HOMECOMINGS FINANCIAL, LLC; INDYMAC BANK, F.S.B.; JP MORGAN CHASE BANK, N.A.; LEHMAN BROTHERS BANK, FSB; M&T MORTGAGE CORPORATION; PLAINS CAPITAL MCAFEE MORTGAGE COMPANY; ONEWEST BANK, FSB PNC FINANCIAL SERVICES GROUP, INC.; PROVIDENT FUNDING ASSOCIATES, L.P.; RECONTRUST COMPANY, N.A.; TAYLOR, BEAN & WHITAKER MORTGAGE CORP.; U.S. BANK N.A.; UNITED FINANCIAL MORTGAGE CORP.; US BANK TRUST COMPANY; WASHINGTON FEDERAL SAVINGS; WELLS FARGO BANK NORTHWEST, N.A.; WELLS FARGO BANK, N.A.; WELLS FARGO FINANCIAL, INC. d/b/a WELLS FARGO FINANCIAL UTAH, INC.; WELLS FARGO HOME MORTGAGE, INC.; WORLD SAVINGS BANK, FSB; and JOHN ROES 1-X as individuals, ABC CORPORATIONS 1-X, XYZ PARTNERSHIPS 1-X, and 123 TRUSTS 1-X,
     Defendants.

The Plaintiffs, by and through their undersigned counsel, Ford & Huff LC, do pray for relief as follows:

## I. PRELIMINARY STATEMENT

1. Among the oldest and most foundational principals of contract law is that parties must have a meeting of the minds when entering into an agreement. The English Court of Exchequer held in the famous case regarding the ships "Peerless" that without "consensus ad idem" (an agreement to the same thing) there is no "binding contract". <u>Raffles v. Wichelhaus</u>, 2 H. & C. 906 (1864). This principle has been adopted into the American common law tradition, has become a bedrock of our contract dispute jurisprudence, and the subject of every first-year law school contracts class.

2. In the present instance, the Plaintiffs entered home mortgage financing agreements with the Defendants believing and expecting that they were entering a borrower/lender relationship. The contracts described the Defendants as lenders. The borrowers believed they were entering the same path trod by in previous decades by their parents or when they purchased their first family homes years ago.

3. In fact, the Plaintiff borrowers were entering an entirely new and different world of high finance where their relationship was bought and sold not between lenders, but outside the lender relationship to a loan servicing company.

4. These loan servicing companies do not have the authority of the original lender in the parties' contractual relationship, and receive greater compensation to foreclose than to engage in loan modification. This creates a perverse negative incentive

4


for servicers to foreclose, regardless of the economic impact of a foreclosure verses a loan modification.

5. This lawsuit seeks to rescind and/or void the loan agreements based on mistake and the missing of the minds by the parties at contract formation.

6. This lawsuit does not seek judicial determination that securitization is illegal or fundamentally flawed.[1] Rather, the result of the success of this civil action would be a choice clearly placed be home loan borrowers: i) a loan which would be securitized resulting in a relationship with a loan servicing company at a lower interest rate, or ii) a loan and relationship which would be be retained by the lender at a slightly higher interest rate. This would not be the end of structured finance; it would be the end of the shock and frustration homeowners experience when trying to reach their lender but instead find themselves dealing with an obtuse never-heard-of-before loan servicing company.

7. Some Plaintiffs are late on their mortgage payments, some Plaintiffs are not. All the Plaintiffs want the traditional borrower/lender relationship for which they bargained, restored again.

---

[1] In fact, counsel for the Plaintiffs believes strongly in the underlying value of securitization and is the editor of the authoritative Practicing Law Institute text on the subject: Steven L. Schwarcz, <u>Structured Finance: A Guide to the Principles of Asset Securitization</u> (Adam D. Ford ed., 3d. ed. 2002 & Supp 2005).

## II.   JURISDICTION

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity and the amount in controversy exceeds the requisite amount.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).

## III.   PARTIES

10. All Plaintiffs, including unknown John Does, are residents of the state of Utah.

11. None of the Defendants are organized or incorporated under the laws of the state of Utah.

12. The first-named Defendant, ABN AMRO Mortgage Group, Inc., is incorporated under the laws of the state of Delaware with its primary place of business in the New York.

13. Defendant Aames Funding Corp is a California Corporation with its primary place of business in California.

14. Defendant, Aegis Wholesale Corporation, is incorporated under the laws of Delaware with its primary place of business in California

15. Defendant, American Home Mortgage Acceptance, Inc., is incorporated under the laws of Maryland with its primary place of business in New York.

16. Defendant, American Mortgage Network, Inc., is incorporated under the laws of Delaware with its primary place of business in California.

17. Defendant, America's Wholesale Lender is a corporation incorporated under the laws of New York, with its primary place of business in California.

18. Defendant, Argent Mortgage Company, LLC, is incorporated under the laws of Delaware with its primary place of business in California.

19. Defendant BAC Home Loans Servicing, LP is a Texas limited partnership with its principle place of business in California.

20. Defendant Bank One, National Association is an Illinois Corporation with its principle place of business in Illinois.

21. Defendant, Bayrock Mortgage Corporation, is incorporated under the laws of Georgia with its primary place of business in Georgia.

22. Defendant Capital One Home Loans LLC a limited liability company organized under the laws of the United States with its principle place of business in Kansas.

23. Defendant, CitiFinancial, Inc. is incorporated under the laws of Maryland with its primary place of business in Maryland.

24. Defendant, CitiMortgage, Inc., is incorporated under the laws of New York with its primary place of business in Maryland.

25. Defendant, Classic Home Lending, Inc. is incorporated under the laws of Texas with its primary place of business in Texas.

26. Defendant, Columbia State Bank f/k/a Columbia River Bank Mortgage Group, is incorporated under the laws of Washington with its primary place of business in Oregon.

27. Defendant, Countrywide Bank is a federally-chartered bank under the laws of the United States with its primary place of business in North Carolina.

28. Defendant Countrywide Bank, FSB is a federally-chartered bank under the laws of the United States with its primary place of business in North Carolina.

29. Defendant, Countrywide Bank, N.A., is a federally-chartered bank under the laws of the United States with its primary place of business in North Carolina

30. Defendant, Countrywide Bank, N.A. f/k/a America's Wholesale Lender, is incorporated under the laws of the state of Virginia with its primary place of business in California.

31. Countrywide Home Loans, Inc. is a New York Corporation with its principle place of business in California.

32. Defendant First Franklin is a division of National City Bank, a national banking association existing under the laws of the United States with it primary place of business in California.

33. Defendant, First Tennessee Bank, N.A. d/b/a First Horizon Home Loans is incorporated under the laws of the state of Tennessee with its primary place of business in Tennessee.

34. Defendant, Franklin American Mortgage Company, is incorporated under the laws of Tennessee with its primary place of business in Tennessee.

35. Fremont Investment and Loan is a California corporation with its principle place of business in California.

36. Defendant GMAC Mortgage, LLC is a limited liability company organized under the laws of Delaware with its primary place of business in Pennsylvania.

37. Defendant, GreenPoint Mortgage Funding, Inc., is incorporated under the laws of New York with its primary place of business in California.

38. Defendant, Homecomings Financial, LLC, is incorporated under the laws of the state of Delaware with its primary place of business in Minnesota.

39. Defendant Indymac Bank, F.S.B. is federally chartered bank with its principle place of business in California.

40. Defendant JP Morgan Chase Bank, N.A. is a New York Corporation with it principle place of business in New York.

41. Defendant, Lehman Brothers Bank, is a Federally-chartered bank organized under the laws if the United States with its primary place of business in New York.

42. Defendant M&T Mortgage Corporation is a New York corporation with its principle place of business in New York.

43.     Defendant OneWest Bank, FSB, a federally-chartered bank with its principle place of business in California, is the successor in interest to Indymac Bank, F.S.B..

44.     Defendant PlainsCapital McAfee Mortgage Company is a Texas Corporation with its principle place of business in Texas.

45.     Defendant PNC Financial Services Group, Inc. is a corporation incorporated under the laws of Pennsylvania, with its primary place of business in Pennsylvania.

46.     Defendant Provident Funding Associates, L.P. is a limited partnership under the laws of California, with its primary place of business in California.

47.     Defendant ReconTrust Company, N.A. is a national trust bank under the laws of the United States with it principle place of business in Texas.

48.     Defendant, Taylor, Bean, & Whitaker Mortgage Corporation, is incorporated under the laws of Florida with its primary place of business in Florida.

49.     Defendant, U.S. Bank, N.A., is incorporated under the laws of the state of North Dakota with its primary place of business in Minnesota.

50.     Defendant, United Financial Mortgage Corporation, is incorporated under the laws of Delaware with its primary place of business in Illinois.

51.     Defendant U.S. Bank Trust Company, N.A. is a North Dakota Corporation with its principle place of business in Minnesota.

52. Defendant, Washington Federal Savings, is a Federally-chartered savings and loan association with its primary place of business in Washington.

53. Defendant Wells Fargo Bank Northwest, N.A. is a national banking association with its principle place of business in Montana.

54. Defendant, Wells Fargo Bank, N.A., is a national banking association with its primary place of business in California.

55. Wells Fargo Financial, Inc. is an Iowa Corporation with its principle place of business in Iowa and is doing business in the State of Utah as Wells Fargo Financial Utah, Inc.

56. Defendant, Wells Fargo Home Mortgage, Inc. is incorporated under the laws of the state of Delaware with its primary place of business in Iowa.

57. Defendant, World Savings Bank, FSB, is incorporated under the laws of California with its primary place of business in California.

58. Defendants John Roes 1-X, ABC Corporations 1-X, XYZ Partnerships 1-X and 123 Trusts 1-X are fictitious individuals and entities that may have liability to Plaintiffs in this matter. Upon the discovery of the identities and liability of these Defendants, Plaintiffs will seek leave of the Court to amend its Complaint to include their true identities.

## IV.    FACTS

59.    Each loan transaction itemized on Exhibit A, including any and all liens given rise to thereby, is herein referred to as "Loan." Collectively, the transactions are the "Loans."

60.    When each Plaintiff entered into their Loan, they believed that they were entering into a borrower/lender relationship where the lender would have an economic interest in their loan and have full authority to amend, modify or alter the terms of their loan at a later date if mutually agreeable.

61.    In fact, every Loan included a clause that said, in effect, that the Loan could be modified in the future at the mutual agreement of the parties. No limitation was placed on this possibility.

62.    Some of the Plaintiffs knew that the Loan could be sold or assumed by a new lender, but all of them believed they would always have a traditional lender/borrower relationship under their Loan.

63.    At the time the Loans were entered into, the Plaintiffs did not know that they would end up in a relationship with a loan servicing company.

64.    Each Loan was securitized in an industry-wide series of transactions by which mortgage lenders collected most of the economic benefit of their secured home loans up-front and sold the right to collect the borrowers' payments through to various investors. This process, called securitization, destroyed the lender/borrower relationship.

65.    Each Loan is now being serviced by a loan servicing company.

66. The loan servicing companies servicing the Loans do not have the same authority to amend, modify or alter the terms of the Loans that the original lender did.

67. Each Defendant knew that the Plaintiffs would end up in a relationship different then the Plaintiffs thought they were entering into.

68. The Defendants knew there was no meeting of the minds on this crucial point when the Loans were entered into.

69. For instance, Wells Fargo published a document titled "<u>Conduit Loan Servicing: Who's Who and What's What?</u>" (attached as Exhibit B) which begins with the stunning sentence: "The thing most borrowers fail to realize about conduit loans is that once a loan has been securitized, they are not working with a "lender" anymore."[2]

70. A conduit loan is a loan which is designed and intended to be securitized. All of the Loans are conduit loans as that term is used by Wells Fargo in this publication.

71. On page 2 of this same document, Wells Fargo admits that: "Typically the borrower's only contact is with the Master Servicer, who typically does not have the power to make any alterations to the existing loan."

72. A Master Servicer is a loan servicing company. All of the Loans were transferred by the original lenders to a Master Servicer as that term is used by Wells Fargo in this publication.

---

[2]Unknown author, Wells Fargo Bank, N.A., accessed on February 1, 2011 at
https://www.wellsfargo.com/downloads/pdf/com/focus/man_housing/Conduit_Loan_Servicing.pdf

73.     Wells Fargo's admission applies to the entire series of securitization transactions to which the Loans were subject. Every Plaintiff lost its lender and no loan servicing company has the full authority that the lender did to amend, modify or alter the terms of their Loan.

74.     For instance, each applicable agreement between the lender of a Loan and a loan servicing company contains language preventing the loan servicing company from taking any act in regards to a Loan that would cause a tax to be incurred by the investors who bought the securities resulting from the securitization of the Loan. Also each applicable agreement between the lender of a Loan and a loan servicing company contains a clause preventing the loan servicing company from making any modification to the Loan which would disqualify the securitization special purpose vehicle (typically called a Real Estate Mortgage Investment Conduit (REMIC)) under applicable federal regulations. These examples are clear instances of limitations on the authority of all loan servicing companies which do not burden lenders who retain the interest in their loans and maintain the relationship with their borrowers.

75.     The Plaintiffs did not understand the difference in authority and economic incentive between a lender who held the economic interest in their loan and had the authority to deal with them in any respect, on the one hand, and a loan servicing company, on the other hand, who would not have a significant economic interest in their Loan and who would not have the same authority to amend, modify or alter the terms of their loan that the lender did.

76. At no time was it disclosed to the Plaintiffs that they would end up in a relationship with a loan servicing company.

77. But every lender on the Loans knew they were going to securitize the Loans and transfer the relationship with the Plaintiff to a loan servicing company at the time the Loan was entered into.

78. The Plaintiffs did not agree to or bargain for a relationship with a loan servicing company.

79. When the Loans were entered into, the Plaintiffs did not understand that the economic interest in their Loan would be held by a securitization special purpose vehicle whose identity would be hidden from them and who would have no ascertainable or accessible employees with whom they could communicate.

80. No Plaintiff ever said any words, took any actions or made any manifestations of any kind that they ever assented to or agreed to the transfer of their Loan and relationship from their lender to a loan servicing company.

81. The Plaintiffs have been and continue to be significantly harmed by not having a borrower/lender relationship with a lender who has an economic interest in their Loan and who has full authority to amend, modify or alter the terms of their Loan because they would like to modify the terms of their Loan and have learned that they have no lender with whom to negotiate.

82. This mistake and lack of meeting of the minds regarding their relationship is hugely significant and, in fact, makes all the difference. The Plaintiffs would not have

entered into the Loan on their home if they understood the relationship they would end up with. They would have instead sought out a small bank or local credit union that would have retained full authority over and full economic interest in their Loan.

83.     At the closing on their property, no Plaintiff was asked to read the documents governing the Loan and its attendant liens, none were given the time to read the documents, and none did, in fact, read the documents.

## CAUSE OF ACTION
### (Rescission—Mistake—Void Agreement)

84.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

85.     The Restatement (Second) of Contracts, §17 states that "the formation of a contract requires a bargain in which there is a manifestation of mutual assent. . ." American Law Institute, Restatement (Second) of Contracts, §17(1)

86.     The bargain between the parties is often referred to as the "meeting of the minds." *See*, e.g., American Law Institute, Restatement (Second) of Contracts, §17, comment 2.

87.      The Utah Supreme Court has recently held that a lack of meeting of the minds, a mistake as to fact, can justify a rescission of the contract. "A party may rescind a contract when, at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract." Deep Creek

Ranch, LLC v. Utah State Armory Bd., 2008 UT 3, 17 (quoting Mooney v. GR & Assocs., 746 P.2d 1174, 1178 (Utah Ct. App. 1987)).

88. The mistake or missing of the minds does not have to be mutual. A single party mistaken justifies the voiding or rescinding of the contract.

89. The Restatement (Second) of Contracts, §153 states:

Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in §154[3], and

 (a) The effect of the mistake is such that enforcement of the contract would be unconscionable, or
 (b) The other party had reason to know of the mistake or his fault caused the mistake.

90. The Utah Supreme Court has largely adopted this standard, stating: "When one party's mistake of fact is coupled with knowledge of the mistake by the other party or a mistake is produced by fraud or other inequitable conduct by the nonerring party, the mistake provides a basis for reformation or recession." Guardian St. Bank v. F.C. Stangl III, 778 P.2d 1, 12 (1989).

91. The Plaintiffs in this action executed their Loan documents based on the mistaken belief that they were entering a borrower/lender relationship.

92. The Lenders knew there would be no borrower/lender relationship.

---

[3] §154 concerns situations where a risk is specifically allocated to a party by the agreement or a court, or when the party remains consciously ignorant by choice.

17

93. Because of this mistake, the Plaintiffs' benefit from their Loan agreement is far less than they thought they would receive. Instead of a lender who had full authority to deal with their contractual relationship and the economic incentive to do so in a manner that would maximize the full economic value to the lender, the Plaintiffs received a relationship with a party who lacked full authority of the lender and lacked the economic incentive to modify the loan rather than foreclose.

94. This mistake was not a future contingency, but a reality present at the contract formation: the Defendants knew the securitization of the conduit Loans would occur with certainty and they knew no borrower/lender relationship was contemplated or planned as a result of the Loan.

95. It would be unconscionable for the Defendants, having withheld material information regarding the Loans from the Plaintiffs, to still receive the benefits of the Loans.

96. As illustrated by the Wells Fargo publication cited above, the Defendants knew that the Plaintiffs did not understand that the securitization of the Loans would destroy the lender/borrower relationship.

97. Based on the material mistake in their formation, Plaintiffs are therefore entitled to an order of this Court rescinding the Loans and/or declaring the Loans void, invalid and unenforceable.

98. In addition, Defendants request restitution and damages in an amount in excess of $75,000 each, the specific amount to be determined at trial.

## JURY DEMAND

99. Plaintiffs respectfully demand that a jury determine all issues of fact at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray judgment against Defendant as follows:

1. For damages to be determined at trial;
2. For rescission of the Loan agreements;
3. For restitution in an amount to be determined at trial;
4. For costs and attorney fees allowed by applicable statutes, equity and contract; and,
5. For such other and further relief as the Court deems just and proper.

DATED this 2st day of February, 2011.

FORD & HUFF LC

/s/Adam D. Ford
_____
Adam D. Ford